UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOEL MURRAY,

                                                 Plaintiff,

    vs.
                                                 9:08-CV-912

WILLIAM F. HULIHAN, Superintendent,       (NAM/ATB)
Mid-State Correctional Facility; M. DEBRACCIO,
Correction Counselor, Mid-State Correctional
Facility; R. FERRARO, Correction Counselor,
Mid-State Correctional Facility; W. KOAGLE,
Correction Counselor, Mid-State Correctional
Facility; S. MOORE, Correctional Counselor,
Mid-State Correctional Facility; B. SIMONS,
Senior Correction Counselor, Mid-State
Correctional Facility; C. CHEYNE, Social Worker,
Mid-State Correctional Facility; M. STRUMLOFLER,
Mid-State Correctional Facility,

                                             Defendants.
_____

JOEL MURRAY, Plaintiff Pro Se
BRIAN J. O'DONNELL, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

      This matter was referred to Magistrate Judge Gustave J. Di Bianco for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c). Upon Magistrate Judge Di Bianco's retirement, the case was reassigned to me on January 4, 2010 by Norman A. Mordue, Chief United States District Judge. (Dkt. No. 33).

Plaintiff filed his complaint[1] pursuant to 42 U.S.C. §§ 1983 & 1985 while plaintiff was an inmate in the custody of the Department of Correctional Services ("DOCS") at Mid-State Correctional Facility ("Mid-State"). (Compl. ¶ 5).[2] Plaintiff's complaint lists eight causes of action. The first and second causes of action allege conspiracy and retaliation, relating to defendants Debraccio, Ferraro, Koagle, Moore, Simons, and Strumlofler. The third and fourth causes of action allege "deliberate indifference" and relate to defendant Hulihan. The fifth and sixth causes of action allege conspiracy and retaliation against defendant Cheyne. The seventh and eighth causes of action relate to all defendants and allege cruel and unusual punishment and denial of due process. (Compl. ¶¶ 23–30). Plaintiff seeks declaratory and injunctive relief. (Compl. ¶ 32).

Presently before this court are two motions: plaintiff's motion for a preliminary injunction (Dkt. No. 22), and defendants' cross motion for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Dkt. No. 24). Defendants' motion also responds to plaintiff's motion for a preliminary injunction, and plaintiff has responded in opposition to defendants' motion. (Dkt. No. 27). For the following reasons, this court recommends denying plaintiff's motion for a preliminary injunction and granting defendants' cross motion for judgment on the pleadings.

---

[1] Although plaintiff has labeled his document "Amended Complaint," it is clear that there is only one complaint in this action. (Dkt. No. 1).

[2] Plaintiff numbered the paragraphs in his complaint sequentially up until his "Prayer for Relief" on page 14, where he starts the numbers over. For clarity, citations to paragraph numbers will refer to paragraphs located on pages 1–14. Citations to material located after page 14 in the complaint will be by page number alone.

**DISCUSSION**

**I.     Facts**

Plaintiff's causes of action arise from a period of time when he was enrolled in a residential treatment program at Mid-State, known as the Alcohol and Substance Abuse Treatment ("ASAT") program. (Def.'s Mem. of Law 1). In January of 2008, plaintiff had recently restarted the ASAT program when he was called into a correctional officer's ("CO") office by defendants Ferraro and Debraccio. (Compl. ¶ 14). Ferraro and Debraccio brought to plaintiff's attention some "pull-ups"[3] and a "refuse to do a detail" order. *Id*. Plaintiff responded that he was not "orientated" and had not signed a contract. *Id*. On January 8, 2008, plaintiff alleges that defendant Koagle deliberately moved plaintiff's bed so that plaintiff's shoes would not be lined up and then gave plaintiff a pull-up for failing inspection. (Compl. ¶ 15). Plaintiff filed a grievance for receiving this pull-up. *Id*. The next day, plaintiff received another pull-up for having his typewriter on his bed and after objecting to that pull-up, received another pull-up for a "negative attitude." (Compl. Ex. B-2 at 4).[4]

Defendant Strumlofler conducted the Inmate Grievance Committee hearing on February 14, 2008, regarding the grievance plaintiff filed after defendant Koagle's

---

[3] Pull-ups are apparently a system by which ASAT participants receive notice of a rule violation from both ASAT counselors and other ASAT participants. (*See* Compl. Ex. B-2 at 24 ("inmates in ASAT are encouraged to accept pull-ups given by both staff and peer inmates . . . this process of acceptance allows participants to develop the skills necessary to learn from their short comings [sic]).

[4] Plaintiff has not paginated the lengthy attachment to his complaint entitled "Exhibit B-2." For clarity, the court will reference pages in this document as "Compl. Ex. B-2" and give the page number, with the cover sheet as pg. 1.

January 9, 2008 pull-up. (Compl. ¶ 16). Plaintiff states that defendant Strumlofler didn't want to call plaintiff's witnesses, read plaintiff's grievance on the record, or have plaintiff's representative present. *Id*. Plaintiff then alleges that, "As a result, the [plaintiff] became argumentative with [Strumlofler] and [Strumlofler] throw [sic] the [plaintiff] out of the hearing." (Compl. ¶ 24).

After leaving the grievance office, plaintiff was called by defendant Moore to go to an interview with the ASAT committee. (Compl. ¶ 17). The committee was comprised of defendants Simons, Ferraro, Debraccio and Strumlofler. *Id*. Plaintiff alleges that the committee "started threating [sic] to remove me from [the] ASAT program if I write any more grievances and that this will be my last chance." *Id*. Plaintiff submitted another grievance, "disregarding this threat." *Id*.

Later that same day, defendant Moore was teaching members of the ASAT program and gave them a five-minute break. (Compl. ¶ 18). When plaintiff returned from the break, defendant Moore told him that he was late, to which plaintiff replied that he knew Moore was "acting actively in cohoots [sic] with Mr. Simons, Mr. Ferraro, and Ms. Debraccio, to throw [plaintiff] out of ASAT." *Id*. Defendant Moore then placed plaintiff on a "contract."[5] *Id*.

Two weeks later, around February 28, 2008, after plaintiff had been removed from the ASAT program and was awaiting placement to another housing unit, he was called in to the corrections officer's office by defendant Debraccio. (Compl. ¶ 19). Plaintiff alleges that the corrections officer raised his voice and approached plaintiff in

---

[5] Apparently, contracts are more serious disciplinary measures than pull-ups.

4

a threatening manner. *Id*. Plaintiff "stood-up [sic] and defended [himself]." *Id*. Plaintiff was then given a misbehavior report. *Id*. Plaintiff was found guilty after a hearing, and as a result, he lost package, commissary, phone and recreation privileges for 30 days to "impress upon [inmate] that this type of behavior will not be tolerated." (Compl. Ex. B-2 at 41–42).

One week later, on March 10, 2008, plaintiff met with defendant Cheyne on a mental health callout. (Compl. ¶ 20). Plaintiff alleges that he told defendant Cheyne about his concern that the ASAT staff members "during [sic] something to me when I walk down the walkway," and he requested a transfer to Marcy Correctional Facility. *Id*. Plaintiff attached a copy of a memorandum written by defendant Cheyne to his complaint. (Comp. Ex. B-2 at 38). The memorandum states that when defendant Cheyne refused plaintiff's request to be transferred to Marcy Correctional Facility and refused to grant him other mental health services, he responded, "What if one day something just sets me off and I lose it[?] I see all the civilians walking up and down that road. There are no [corrections officers] around. By the time you pressed the button and someone got to you, who knows what could happen[?]" (Comp. Ex. B-2 at 38).

As a result of defendant Cheyne's memorandum, plaintiff received a Tier III[6] disciplinary hearing on March 19, 2008, after which he lost commissary, phone, and

---

[6] DOCS regulations provide for three tiers of disciplinary hearings, depending upon the seriousness of the misconduct charged. *See Lee v. Coughlin*, 26 F. Supp. 2d 615, 618 (S.D.N.Y. 1998) (explaining the levels of disciplinary hearing, together with the possible dispositions). Tier III hearings are for the most severe disciplinary infractions and may result in the highest penalties. *Id.*

5

package privileges for two months and was placed on "keeplock" for two months. (*Id.* at 43). However, these punishments were suspended for one month and deferred for six months. *Id.* This hearing was reviewed and reversed by the director of the Special Housing/Inmate Disciplinary Program on May 5, 2008. (Compl. Ex. B-2 at 47).

Plaintiff received a memorandum dated May 22, 2008, which apparently was in response to a letter written by plaintiff to defendant Simons. (Compl. Ex. B-2 at 36). The memorandum informed plaintiff that his name had been added back to the ASAT programs need list, but due to plaintiff's "previous past two unsatisfactory removals from ASAT, (10/29/07 and 3/2/08), your name was placed on the bottom of ASAT programs [sic] needs list." *Id.*

Plaintiff has now been transferred to Marcy Correctional Facility and is apparently in an ASAT Dorm. (Pl.'s Decl. of Service at Dkt. No. 27; Defs.' Mot. Ex. 1).

## II. Judgment on the Pleadings

After the pleadings are closed, a motion to dismiss for failure to state a claim is properly brought as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). *Maggette v. Dalsheim*, 709 F.2d 800, 801 (2d Cir. 1983) (citations omitted). *See* Fed. R. Civ. P. 12(b), 12(c) and 12(h)(2). The motion for judgment on the pleadings is then treated according to the same standard as a motion to dismiss under Rule 12(b)(6). *Id.*

To survive a motion to dismiss, the plaintiff must provide "the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief

6

above the speculative level.'" *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) (quoting *inter alia ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's factual allegations must be sufficient to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Id.* (citing *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007)). When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citations omitted). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citing *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989)). In this case, plaintiff has attached a myriad of documents to his complaint. (Pl. Ex. B-2) (Dkt. No. 1-1). These documents consist mainly of plaintiff's grievances and disciplinary records relating to this action. This court has considered these documents in making its determination.

**III.   Retaliation**

In order to establish a claim of retaliation for the exercise of a constitutional

right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for "adverse action" taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997)). Third, the plaintiff must establish a causal connection between the protected conduct and the adverse action. *Gill v. Pidlypchak*, 389 F.3d 378, 380 (2d Cir. 2004) (citation omitted). The court must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiff must set forth non-conclusory allegations. *Id.* (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)). Finally, even if plaintiff makes the appropriate showing, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *Bennett*, 343 F.3d at 137.

The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003), *superseded by* 2003 U.S. App. LEXIS 13030, 2003 WL 360053 (2d Cir. Feb. 10, 2003)) (omission in original). This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.*

Here, it appears plaintiff argues that the constitutionally protected conduct is his right to file grievances, as protected by the First Amendment. Plaintiff argues that

the defendants conspired to remove him from the ASAT program "as a direct result of [plaintiff] filing inmate grievances." (Compl. ¶ 24). Plaintiff's claims of a causal connection between his grievances and the conduct of the defendants, however, are conclusory. Moreover, as plaintiff's own complaint indicates, what he characterizes as retaliatory actions by the defendants were, in fact, remedial and didactic measures integral to the ASAT program:

> [O]nce in [the] ASAT program, you are required to have your shoes lined together, nothing on your lockers or beds, beds made with hospital corners . . . any one of these violations can get you removed from the program. When [an] ASAT counselor give [sic] you a pull-up or contract, you are prohibited from protesting or contesting any pull-ups or contracts, regardless if you're wrong or right. The inmates in New York State Department of Correctional Facilities/Services in ASAT program [sic] encounter this type of abuse from ASAT staff members on a daily situations [sic] and circumstances, which only foster [sic] hate and resentment towards those in authority.[7]

(¶ 3). Although plaintiff refers to these rules as "abuse," the fact that one's shoes must be in line or that one's bed must be made in a particular way cannot be plausibly characterized as "abuse," regardless of plaintiff's disagreement with these requirements. Plaintiff's main issue seems to be with the ASAT program itself and with rules that he finds unnecessary, annoying, or detrimental to his recovery. In his "Prayer for Relief" that comprises pages 14 through 18 of his complaint, plaintiff delineates what seem to be his own proposed standards for how the ASAT program

---

[7] Plaintiff also claims that the ASAT staff "demeanor towards inmates teaches [n]egative consequences comes [sic] before recover [sic]." *Id*.

should be run. (Compl. pgs. 14–18).

Plaintiff concedes that he violated the rules and became argumentative with the staff. However, he blames the staff for his inappropriate reactions. He states, for example, that one of the officers moved plaintiff's bed so that his shoes would be out of line. (Compl. ¶ 15). Plaintiff alleges that he became argumentative with defendant Strumlofler when he refused to read plaintiff's grievance into the record. (Compl. ¶ 24). On February 28, 2008, plaintiff states that a "CO" took off his glasses and "raised his voice," and approached plaintiff "in a threatening manner," causing plaintiff to stand up and defend himself. (Compl. ¶ 19). Plaintiff appears to be surprised that he received a misbehavior report for that conduct. *Id.* Plaintiff's argumentative behavior at the grievance hearing on February 14, 2008, was the reason he was "kicked out" of the hearing.

From the ASAT standards plaintiff himself includes in his complaint, is it clear that the defendants would have acted similarly even if plaintiff had not filed grievances. Argumentative behavior, having one's shoes out of line, and putting items on one's bed all appear, from plaintiff's own description of the ASAT program, to be valid reasons for remedial action.

Plaintiff's description of his subsequent meeting with defendants Debraccio, Ferraro, Simons, and Stromlofler is at odds with the grievance documents that plaintiff has submitted as exhibits to the complaint. (Compl. Ex. B-2 at 33). Plaintiff states

that after he was "kicked out" of the grievance committee hearing, he was "threatened" by defendants Debraccio, Ferraro, Simons, and Strumlofler, who told him that he would be removed from ASAT if he filed any more *grievances*. (Compl. ¶ 17). Plaintiff's own grievance states that "[o]n 02-14-08, . . . I was told by [the ASAT] committee that one more *contract* and I was done with ASAT." (Compl. Ex. B-2 at 5). The Superintendent's response to one of plaintiff's grievances states that plaintiff was told that he would be removed from the program if he did not sign the ASAT "contract." (Compl. Ex. B-2 at 33).

The Superintendent's response further states that at the meeting where plaintiff claims he was "threatened," the defendants actually gave him "another opportunity at improving his involvement in ASAT. *Id.* In fact, when plaintiff's original behavioral "contract" was rescinded because the officers could not find the "signed orientation sheet," plaintiff was given another "orientation" for the program, and given another chance to adjust. *Id.* It is clear, from plaintiff's own pleading and the attachments, that it was not plaintiff's grievances, but his inability to abide by the rules of the ASAT program that motivated the actions of the defendants.

On the same day, February 14, 2008, plaintiff concedes that he had an argument with Mrs. Moore about whether plaintiff returned late from a "break." (Compl. ¶ 18). Plaintiff states that he told Mrs. Moore that he knew that she was in "cohoots [sic]"

with defendants Simons, Ferraro, and Debraccio to throw plaintiff out of the program. *Id.* Arguing with a teacher is a valid reason for disciplinary action. Plaintiff's inappropriate reaction to discipline is evident in the language he used in the grievance he filed after he was removed from the ASAT program (following the argument he had with defendant Moore):

> Ms. Moore who views me as a <u>Pimp</u> [sic] actively acted [sic] in Cohoots [sic] with the ASAT Board Members who wanted to throw me out of ASAT; Ms. Moore as [sic] a former Crack head [sic] addict and prostitute hate [sic] Pimps [sic] and as a result claims that I was late for groups [sic] after a Five [sic] minutes [sic] break . . .

(Compl. Ex. B-2 at 5). The apparent basis for the defendants' discipline of plaintiff is his bad behavior, triggered by what he views as "harassment" inherent in the ASAT program, not some conspiracy to expel him from ASAT because he filed grievances.

Plaintiff's conclusory allegations of retaliation by defendant Cheyne likewise fails to state a claim. Plaintiff alleges that defendant Cheyne was retaliating against plaintiff "for ASAT staff members and her Mental Health co-worker Doctor menlendez [sic], who I am suing in the Federal Court." (Compl. ¶ 27). In the same paragraph, plaintiff alleges that defendant Cheyne "made these unfounded statements was to make it appear as though I was a problem for DOCS . . . ." *Id.* Plaintiff's allegations of retaliation by defendant Cheyne relative the ASAT program do not make sense because he had already been removed from the ASAT program by the time

that he met with defendant Cheyne; and she was not involved in the ASAT program. Plaintiff makes no plausible allegation that would indicate why defendant Cheyne would retaliate against plaintiff for filing grievances against counselors in the ASAT program.

Plaintiff's claim of retaliation by Cheyne relating to the doctor apparently refer to a civil rights action he filed in the Northern District of New York on October 17, 2003, against numerous defendants, including Dr. Melendez. *Murray v. Pataki*, 9:07-CV-1263 (N.D.N.Y.). The district court granted defendants' motion for summary judgment and dismissed plaintiff's claims against Dr. Melendez because plaintiff had failed to effect service of process over the five years the lawsuit had been pending.[8] The case is currently on appeal to the Second Circuit. (Dkt. Nos. 154-57 in 9:03-CV-1263). It is unclear how defendant Cheyne, a social worker at Mid-State in 2008, would have been aware of a lawsuit against Dr. Melendez, allegedly a doctor at Clinton Correctional Facility who cared for plaintiff in 2002.[9]

Plaintiff has failed to state claims of retaliation because he has presented nothing but his conclusory allegations, that essentially all of the actions taken by the

---

[8] On March 3, 2009, Magistrate Judge Treece recommended dismissing the action *inter alia* for the failure to serve Dr. Melendez, and on April 9, 2009, District Judge Suddaby adopted the recommendation. (Dkt. Nos. 149, 151 in 9:03-CV-1263).

[9] *See Murray v. Pataki, et al.,* 9:03-CV-1263 (N.D.N.Y) (Dkt. No. 10 "Second Amended Complaint" at ¶¶ 9, 22, 38).

defendants were motivated by his grievances.  He has, therefore, failed to plead a plausible causal connection between defendants' actions and plaintiff's grievances. While there is some temporal proximity between defendant's actions and plaintiff's grievances, that proximity is only a result of the number of grievances plaintiff filed in the period of time covered by his allegations.  The grievances, together with the associated decisions, attached to plaintiff's complaint support the court's findings. Accordingly, this court recommends that plaintiff's claims of retaliation against all the defendants be dismissed.

## IV. Other Claims

As to plaintiff's claims of conspiracy, his allegations are merely conclusory and implausible claims, unsupported by any additional documents filed with his complaint.[10]  Plaintiff apparently views any disciplinary action taken by anyone as

---

[10]Plaintiff includes 42 U.S.C. § 1985(3) as a basis for his conspiracy claims.  (Compl. ¶¶ 23, 27).  To establish a claim under section 1985(3), plaintiff must establish a racial or class-based conspiracy to deprive a person or class of persons of equal protection of the laws. " *Mian v. Donaldson, Lufkin & Jenrette Securities Corporation,* 7 F.3d 1085, 1087 (2d Cir. 1993).  Although near the end of his statement of facts, plaintiff states that "only black inmates with Conditional Release dates get removed from ASAT for the smallest thing."  (Compl. ¶ 21).  The only other reference to "people of color" appears in the fourth cause of action, alleging deliberate indifference by defendant Hulihan alone, stating that he allows the ASAT staff to "single-out people of color." (Compl. ¶ 26).  There is no reference to any racially based conspiracy in either of plaintiff's causes of action alleging section 1985 conspiracy.  (Compl. ¶¶ 23, 27).  In fact, in paragraph 23, plaintiff states that defendants "*for personal reasons* have conspire [sic] to violate the Plaintiff's First, and Fourteenth Amendment Rights . . . ." (emphasis added).  In paragraph 27, plaintiff alleges that defendant Cheyne "conspire [sic]," but does not indicate with whom she conspired.  Plaintiff fails to state a claim under section 1985.

In one of plaintiff's causes of action, he makes a passing reference to 42 U.S.C. § 1986. (Compl. ¶ 25).  Plaintiff includes this reference in a paragraph alleging that defendant Hulihan was

evidence of a conspiracy among those meting out the discipline, regardless of whether they are associated or not.  The only apparent connection between all of the defendants is the plaintiff, which does not, by itself, establish a causal connection.  Conclusory allegations are insufficient to establish a cause of action under the civil rights statutes and may be dismissed on the pleadings alone.  *See Barr v. Abrams*, 810 F.2d 358, 363 (2d. Cir. 1987).  *See also Zemsky v. City of New York*, 821 F.2d 148, 151 (2d Cir. 1987); *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983).  Plaintiff has not alleged any facts sufficient to render plausible his claim that defendants conspired against him to violate his constitutional rights.  Accordingly, this court recommends that plaintiff's claims of conspiracy be dismissed.

Plaintiff adds a claim entitled "Cruel and Unusual Punishment."  (Compl. ¶ 29).  The Eighth Amendment prohibits cruel and unusual punishments, including punishments that involve the unnecessary and wanton infliction of pain.  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).  The plaintiff must demonstrate that the conditions result in an "unquestioned and serious deprivation of basic human needs," and that defendants imposed those conditions with deliberate indifference.  *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citing *Wilson v. Seiter*, 501 U.S. 294, 297

---

deliberately indifferent to "the consequences of his conduct."  Section 1986 provides a cause of action against anyone having knowledge of a section 1985 conspiracy, who fails to prevent the violation if he or she has the power to do so.  Clearly, plaintiff's citation to section 1986 was inappropriate and the complaint states no claim under this section.

(1991); *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985)). Neither the alleged removal of plaintiff from the ASAT program nor the imposition of 30-days in the Special Housing Unit are "punishments" that involve the unnecessary and wanton infliction of pain, and plaintiff has stated no deprivation of basic human needs. Accordingly, this court recommends that plaintiff's cause of action alleging cruel and unusual punishment be dismissed as to all defendants.

Plaintiff also suggests he has a due process claim. (Compl. ¶ 30). To establish a claim based on a violation of procedural due process, a plaintiff must first establish a constitutionally protected liberty or property interest that a plaintiff was denied without the appropriate procedural safeguards. *See Perry v. McDonald*, 380 F.3d 159, 173 (2d Cir. 2001) (citations omitted). Plaintiff alleges that his due process rights were violated because he was "prevented from completing his recommended program." (Compl. ¶ 30).

Plaintiff associates the ASAT program with conditional release and believes that removal from the ASAT program "significantly affected his daily activities to participate in the required recommended program inorder [sic] to secure his release from imprisonment." (Compl. ¶ 25). If plaintiff is claiming that his removal from the ASAT program was done without due process, his argument fails, because inmates

have "no constitutional right to discretionary good time release, or to participation in prison programs which might expedite release." *Fifield v. Eaton*, 07-CV-6521L, 2009 U.S. Dist. LEXIS 96967, *5-*6, 2009 WL 3429791, (W.D.N.Y. October 20, 2009). Because plaintiff has failed to establish a liberty interest, no due process violation occurred.[11] Accordingly, this court recommends that plaintiff's due process claim be dismissed.

**V. Plaintiff's Motion for Preliminary Injunction**

Plaintiff has also moved for a preliminary injunction. (Dkt. No. 22). In this motion, he sought an order enjoining DOCS from transferring plaintiff to Marcy Correctional Facility. Plaintiff evidently thought the transfer would be "retaliatory" and was only being done in order to "MOOT Plaintiff's Declaratory Injunctive Relief." (Pl.'s Mot. for a Prelim. Inj. 2. (capitalization in the original)).

Plaintiff is correct in that his transfer renders his injunctive relief moot—but only the relief requested in his motion. Plaintiff did not request any injunctive relief in his complaint that was affected by his transfer to Marcy. Plaintiff has also failed to meet the requirements for a preliminary injunction because he has not established that he is likely to suffer irreparable injury, that he will likely succeed on the merits or that

---

[11] Plaintiff also alleges that defendants "neglected to follow their own rules." (Compl. ¶ 30). However, the violation of state statutes, rules, and/or regulations does not automatically rise to the level of a constitutional violation. *Dixon v. Goord*, 224 F. Supp. 2d 739, 744-45 (S.D.N.Y. 2002). *See Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990)).

17

a balance of hardships tip decidedly in his favor.  *See Moore v. Consolidated Edison* 409 F.3d 506–511 (2d Cir. 2005).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's motion for a preliminary injunction (Dkt. No. 22) be **DENIED**, and it is further

**RECOMMENDED**, that defendants' cross-motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c) (Dkt. No. 24) be **GRANTED**, and the complaint be **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 8, 2010

Hon. Andrew T. Baxter
U.S. Magistrate Judge